[L. A. No. 2989. Department One.—November 27, 1912.]

J. B. T. LEAVENS, Respondent, v. PINKHAM & McKEV-ITT (a Corporation), Appellant; B. MAES, Cross-defendant and Respondent.

APPEAL—DENIAL OF NONSUIT—REFUSAL TO STRIKE OUT TESTIMONY—NONAPPEALABLE ORDER.—No appeal lies from an order denying a motion for a nonsuit or from rulings made during the course of the trial refusing to strike out testimony. The action of the court in such matters may be reviewed on an appeal from the judgment, if properly presented by the record.

SALE—PURCHASE BY AGENT HAVING OSTENSIBLE AUTHORITY—EVIDENCE. In an action to recover the purchase price of fruit alleged to have been bought by the defendant acting through its agent, and which

the defendant claimed to have received merely on consignment to be sold for the benefit of the consignors, the evidence is held sufficient to support the finding of the jury of an actual sale to the defendant, and that the defendant, by want of ordinary care, had allowed its agent to appear to the sellers as having the authority to enter into the contracts of sale on its behalf.

ID.—AUTHORITY OF GENERAL MANAGER OF BUSINESS—BUYING OF FRUIT. Where an agent is by his principal put in charge of a business in a certain locality as the manager thereof, he is clothed with apparent authority to do all things that are essential to the ordinary conduct of the business at that place. If the business consists in large part of the buying of fruit, he is apparently clothed with authority to buy for his principal. Such acts are within the apparent scope of his employment, and third persons acting in good faith and without notice of or reasons to suspect any limitations on his authority, are entitled to rely on such appearances.

ID.—ACTUAL AUTHORITY TO BUY—SECRET LIMITATION AS TO PRICE— BONA FIDE SELLER.—Where a general agent has actual authority to buy, a secret limitation as to the price he is authorized to pay is not binding on a third person who has acted in good faith, relying upon his apparent general authority, provided he has exercised reasonable prudence, and the terms and price fixed are not so unusual or unreasonable as to fairly put a prudent man on his guard.

ID.—STATUTE OF FRAUDS—ACCEPTANCE BY AGENT.—The acceptance of goods purchased under a verbal contract of sale, by an agent having authority to make the purchase, is a sufficient acceptance by the principal to obviate any objection based on the statute of frauds.

APPEAL from a judgment of the Superior Court of San Bernardino County. Bejamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

Kuster, Loeb & Loeb, and Edward G. Kuster, for Appellant.

F. B. Daley, for Respondent.

ANGELLOTTI, J.—This action was brought to recover money claimed to be due plaintiff upon: 1. An alleged contract of sale by plaintiff to defendant of a crop of oranges belonging to plaintiff; 2. A similar alleged contract between one B. Maes and defendant for Maes's oranges; and 3. Similar alleged contracts between plaintiff's father, J. M. Leavens, and defendant, with respect to oranges, lemons, and grape fruit, the claims of Maes and J. M. Leavens having been

assigned to plaintiff. Defendant denied that it ever entered into any of the alleged contracts, claiming that it received all fruit asserted to have been delivered under the same, on consignment to be packed, shipped, marketed, and sold for the benefit of the consignors, and the net proceeds thereof only to be paid to plaintiff and his assignors. These net proceeds did not exceed $775, for which sums defendant offered to allow plaintiff to take judgment. The case was tried with a jury, which, in addition to answering certain special issues submitted, found a general verdict in favor of plaintiff for $1,072.22 on plaintiff's own contract, for $1,039.36 on the Maes contract, and for $16.26 on the J. M. Leavens contract, an aggregate of $2,127.84. Judgment was entered in favor of plaintiff on such verdict. This is an appeal by defendant from such judgment. There are also attempted appeals from an order denying defendant's motion for a nonsuit, and two rulings made in the course of the trial refusing to strike out certain testimony, but none of these orders or rulings was an appealable order. If the trial court erred in any of these matters, its action may be reviewed on the appeal from the judgment, if properly presented by the record.

The only point made by the briefs on this appeal is as to the sufficiency of the evidence to sustain the verdict of the jury, and it is only in one respect, a matter essential to any recovery on the theory of a sale, that this claim is made. It is not questioned that the evidence is sufficient to sustain the conclusion that one H. G. Hand, an agent of defendant for certain purposes at least, entered into the alleged contracts with plaintiff and his assignors, purporting to do so on behalf of defendant corporation, that he received the oranges, lemons, and grape fruit for which compensation is here sought, under said contracts, and that the amount awarded plaintiff by the verdict is correct if such contracts are legally binding on defendant. It may be conceded, too, that the evidence shows without conflict that Hand did not have actual authority from defendant to purchase any of the oranges or lemons, and that his authority to purchase grape fruit limited him to a price not exceeding three dollars per hundred pounds, while by his contract with J. M. Leavens he agreed to pay $3.50 per hundred pounds. Plaintiff's theory is that Hand had the ostensible authority to make these contracts of purchase on behalf

of defendant, the authority defined by section 2317 of the Civil Code as being "such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess," and that defendant is therefore bound by such contracts.   Section 2334 of the Civil Code provides that "a principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof," and it is claimed that the evidence was such as to sustain a conclusion that plaintiff and each of his assignors entered into said contracts with Hand, as the agent of defendant, and delivered their property to him as such agent thereunder, in good faith and without want of ordinary care.   The answers of the jury to special issues submitted to them on this branch of the case were all in favor of plaintiff's theory, being substantially that either intentionally or by want of ordinary care an appearance was allowed by defendant to exist and be known to plaintiff and each of his assignors that Hand was authorized to enter into and execute such contracts, and that each of them in dealing with Hand as defendant's agent acted in good faith and without want of ordinary care.

It would serve no useful purpose to discuss in this opinion at great length the evidence given on the trial.   Bearing in mind the well settled rules that all conflicts in the evidence were for the jury to determine, and that the verdict must be sustained by an appellate court if there is sufficient evidence, considered in connection with such inferences as may reasonably be drawn therefrom, to sustain it, regardless of the evidence tending to a contrary conclusion, we shall briefly state such of the evidence as, in our judgment, sufficiently supports the verdict.

Defendant corporation, with its principal place of business in southern California at Los Angeles, has for several years operated packing houses in various portions of the state, at which it received citrus fruits for packing and shipping to market.   The evidence warrants the conclusion that while very frequently it did this as agent of the persons from whom it received the fruit, accounting to them only for the net proceeds, it also very frequently bought the fruit outright from the growers.   One of its packing houses was at Patton, near

the city of San Bernardino, in and about which plaintiff and his assignors resided. In the spring of 1908 Hand was installed as manager of this packing house, and continued in that capacity throughout the transactions involved in this action. He was the sole representative of defendant in that locality, and although Mr. Pinkham, the president of defendant corporation, at times visited Patton and in company with him inspected growing crops in that vicinity, he personally transacted all the business done by defendant at that place. He had an automobile, on which was printed in large letters "H. G. Hand, Manager for Pinkham & McKevitt," and the evidence was sufficient to warrant the conclusion that Mr. Pinkham, who rode with Hand therein, had full knowledge of this. He had in his possession printed forms of contract for the purchase by defendant of citrus fruits, defendant's name being printed thereon, which forms were furnished him by defendant, and which he used in making his contracts of purchase. During the spring of the year 1908 Hand purchased oranges for and in the name of defendant from plaintiff and from each of his two assignors, Maes and J. M. Leavens, and his contracts in this behalf were recognized as binding by defendant and the vendors were subsequently paid therefor with checks signed by defendant. During the same time, he purchased in the same way for defendant the oranges of numerous other growers in that vicinity. In fact, the great bulk of the very considerable business done by him for defendant in that locality consisted of the absolute purchase of the fruit, as distinguished from the taking of it on consignment for sale. No question was ever raised by defendant as to his authority to buy as he did during that season. In fact, it is admitted that he did not exceed the authority given him in a single case during the season, and that he had been expressly directed to buy oranges to the extent to which he did purchase and authorized to pay the prices he had agreed to pay. By such directions he was expressly authorized to purchase from such persons as he saw fit to purchase from, being limited only as to the amount and price. Two or three of the persons with whom he contracted communicated with defendant at its office in Los Angeles as to his authority to make the contracts proposed, and the testimony as to the response given was such as to warrant a conclusion on the part of the inquirer that what-

ever Hand assumed to do was all right.   Everybody who sold to him received without question from defendant the full amount of the agreed price, and there is no pretense that any one was ever expressly advised by any act or word of defendant that there was any limitation on the power of Hand to bind defendant by such contracts of purchase as he saw fit to make.   During the spring of 1909 he made many similar purchases as agent for and in the name of defendant, including those here involved.   According to the brief of counsel for defendant, upwards of twenty thousand dollars of these were unauthorized, and Hand did not report the same to defendant, but designated the fruit so obtained in his "manifests or car reports" as "consigned fruit," that is, fruit which was being handled for the account of the grower.   Included among these unauthorized purchases were those here involved, with the single exception of the grape fruit purchased from J. M. Leavens.   Hand was authorized to purchase that, but his secret instructions limited him to three cents a pound, while he agreed to pay three and a half cents a pound.   When the market weakened and prices dropped during that season, defendant found itself confronted with the claims of those who had entered into such contracts of sale with Hand, and after investigation paid most of them in full, paid some with a slight discount, and rejected only the claims in controversy in this action.

We are of the opinion that there can be no question that the situation disclosed by the evidence we have stated was such as to reasonably support a conclusion that defendant by want of ordinary care allowed Hand to appear to the growers in and about Patton as having the authority to enter into, on its behalf, such contracts of purchase of fruits as he made. Defendant was engaged in the business in and about Patton not only of taking citrus fruits on consignment for the growers, but also in the business of buying outright such fruit. Hand was admittedly its agent and was apparently in charge of its business in that locality, acting as its sole representative in all that it did—its general manager at that place.   He was apparently acting within the scope of a general employment to represent defendant in its business at that place, and such business included not only the taking of fruit on consignment, but also the purchase of fruit.   Absolutely nothing was done

by defendant to indicate to those with whom he was known to be transacting business that there was any limitation whatever imposed on him. During the whole of the previous season his contracts of the character of those involved in this action were accepted without question by defendant as binding upon it. When inquiry was made as to his authority in two or three cases, the responses were such, construing the evidence in the light most favorable to defendant, as to indicate that whatever he did in such matters was acceptable to defendant. It will not be questioned, we assume, that where an agent is by his principal put in charge of a business in a certain locality as the manager thereof, he is clothed with apparent authority to do all things that are essential to the ordinary conduct of the business at that place. If the business consists in large part of the buying of fruit, as we must assume under the evidence it did in this case, he is apparently clothed with authority to buy for his principal. Such acts are within the apparent scope of his employment, and third persons acting in good faith and without notice of or reasons to suspect any limitation on his authority, are entitled to rely on such appearances. (See Clark & Skyles on Agency, secs. 200, 208, 261.)

That the evidence was such as to warrant the jury in concluding that this was the situation in so far as plaintiff and his assignor J. M. Leavens were concerned, we have no doubt. Each of them had sold fruit to Hand as the agent of the defendant during the previous season, and had received the purchase price from defendant. They also had knowledge of the other facts warranting a conclusion that he was invested with full authority in the matter of such purchases. Certain testimony of plaintiff himself given on cross-examination, which is relied on by appellant, is not of such a nature as to compel a conclusion that he had any intimation or suspicion that Hand was limited to such purchases as he was specially directed to make. Nor was there anything in the testimony given in regard to the conversation with Mr. Pinkham relative to Hand not having been authorized to purchase certain lemons, when such testimony is viewed in the light most favorable to respondent, which compels such a conclusion. We have considered all the points made by learned counsel for appellant in support of the claim that neither of the Leavens can be held to have acted in good faith and with ordinary care

in their dealing with Hand, and are satisfied that it must be held that the verdict of the jury on these matters has sufficient legal support in the evidence.

As to the grape fruit sold by J. M. Leavens to Hand for defendant, it will be remembered that Hand was authorized to buy, and that the only excess of authority was in agreeing to pay three and a half cents per pound, when he was limited by secret instructions to three cents per pound. It is well settled that such a limitation is not binding on a third person who has acted in good faith, relying upon an apparent general authority of the agent, provided he has exercised reasonable prudence, and the terms and price fixed were not so unusual or unreasonable as to fairly put a prudent man on his guard. (See Clark & Skyles on Agency, sec. 206c; Mechem on Agency, sec. 362.)

As to plaintiff's assignor Maes, the evidence in the record is not as clear and explicit as in regard to the Leavens on the question of knowledge of the matters held sufficient to show ostensible authority, and the exercise of ordinary care by the vendor in dealing with Hand as the fully authorized agent of defendant. There is undoubtedly enough in the evidence to show his good faith in so dealing. Maes had lived in the neighborhood for eighteen years. He had sold his sweet oranges to Hand for defendant in 1908, and received his money therefor from defendant without question. He delivered the oranges so sold at defendant's packing house at Patton, where Hand was in charge as manager. He of course knew that Hand continued so in charge of defendant's business up to and including his sale to him in 1909, which transaction was entered into at the packing house. There was nothing to require a conclusion that he had notice of anything tending to indicate any limitation on his authority to act generally in such business as defendant was conducting in that locality, and it is fairly inferable from the evidence as to the extent to which that business included the absolute purchase of fruit that Maes had knowledge thereof. On the whole, we do not feel that we would be warranted in holding that the findings in regard to Maes are not sufficiently sustained by the evidence.

There is nothing in the point that the contract with Maes is unenforceable because not in writing. If as to him Hand

was authorized to enter into a contract binding on defendant for the purchase of the fruit, his acceptance of such fruit was a sufficient acceptance by defendant to obviate any objection based on the statute of frauds. (Civ. Code, sec. 1624, subd. 4.) What we have said also sufficiently disposes of all the points made in regard to the denial of the motion for a non-suit and the motions to strike out certain testimony.

The judgment appealed from is affirmed.

Sloss, J., and Shaw, J., concurred.